IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH GOSLINE,

Plaintiff,

vs.                                          No. 1:07-cv-1274 MCA/RLP

NEW MEXICO FINANCE
AUTHORITY, et. al,

Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant Robert Caswell Investigations, Inc.'s Motion for Summary Judgment* [Doc. 48], filed August 13, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court concludes that the Motion should be **GRANTED.**

I.      BACKGROUND

Plaintiff Joseph Gosline brings this lawsuit alleging various federal and state law claims arising from the termination of his employment as Chief Financial Officer of the New Mexico Finance Authority ("NMFA").   The movant is Defendant Robert Caswell Investigations, Inc. ("RCI").  The factual background of this case is set forth more fully in a *Memorandum Opinion and Order* filed concurrently herewith ruling on the Motion for Summary Judgment filed by Defendants William Sisneros and John Duff.  The relevant facts, for purposes of this Motion, are set forth below.  They are undisputed, except where noted.

RCI, a New Mexico corporation, has a contract with the State of New Mexico to

provide investigative services. [Doc. 49-2 at 1–2 (Casey Aff. ¶ 3.] NMFA's Chief Operating Officer, Defendant John Duff, contacted RCI in the fall of 2007 to investigate concerns regarding apparent unauthorized computer use at NMFA. [Id. at 2 (Casey Aff. ¶ 4).] NMFA provided RCI with a packet of information that described a computer virus that was identified as having moved from employee Grace Romero's computer to that of her supervisor, Gosline. [Id. (Casey Aff. ¶ 5).] Also provided in the packet of information were "screen shots" allegedly taken from Gosline's computer that purported to show that Gosline was using his NMFA computer to send and receive sexually-explicit emails and photographs, to answer erotic advertisements on the Santa Fe Craigs List website, and to solicit sexual liaisons. [Id. at 3 (Casey Aff. ¶ 6).] NMFA also provided RCI with documentation from an independent computer monitoring agency that allegedly showed Gosline had accessed his personal email with excessive frequency, conducted inappropriate Internet searches, and accessed sexually explicit sites. [Id. (Casey Aff. ¶ 7).] It is undisputed that RCI did not itself actually collect the screen shots or monitor Gosline's computer usage. Rather this was information compiled by NMFA or its contractors and provided to RCI to use in its investigation. [Id. at 2 (Casey Aff. ¶ 5).]

Gosline admits that he opened emails containing graphic sexual material, but claims he was unaware of the content before he opened them. He otherwise denies the allegations of inappropriate computer use. [Doc. 56-5 at 3.]

It is undisputed, however, that on November 2, 2007, two investigators from RCI interviewed Gosline for about 25 minutes. [Doc. 49-2 at 4–5 (Casey Aff. ¶¶ 13–14).] They

confronted him with the screen shots and the allegedly inappropriate emails.  [Id. at 4 (Casey Aff. ¶ 14).]  RCI claims Gosline acknowledged inappropriate computer use while at work; Gosline claims he denied inappropriate workplace computer use.  [Id. at 5 (Casey Aff. ¶¶ 14–15); doc. 56-5 at 4 (Gosline Aff. ¶ 18).]

The investigators then asked Gosline to take a polygraph examination and Gosline complied.  [Doc. 56-5 at 3 (Gosline Aff. ¶ 12).]  The subject of the polygraph examination was alleged financial improprieties, not computer use.  [Id.]  It was reported that Gosline "passed."  [Doc. 49-2 at 5 (Casey Aff. ¶ 16).]  Nevertheless, Gosline was immediately placed on administrative leave pending investigation into allegations that he had misused his computer.  [Doc. 39-3.]

RCI prepared a report of its investigation and submitted it to Defendant Duff.  [Doc. 49-2 at 6 (Casey Aff. ¶ 18).]  Duff recommended to Defendant Sisneros that Gosline be terminated because of the alleged computer misuse.  [Doc. 39 at 5–6 (Duff Aff. ¶ 19)].  Defendant Sisneros terminated Gosline's employment on December 11, 2007.  [Doc. 50 at 5.]  The reasons given for the termination were that Gosline "violated the New Mexico Finance Authority's Acceptable Use policy" by using his NFMA computer and its network to solicit sexual relationships and to send sexually explicit email.  [Doc. 37-5 at 1 (Termination Letter).]  Sisneros stated in his letter that Gosline had used the "NMFA network, equipment and time for the purpose of viewing sexualized material sent to a private email account" and that he had sent a "sexually explicit picture of [himself] from [his] work computer in response to messages that [he] opened at work."  [Id. at 3.]  The Termination

3

Letter stated that Sisneros considered Gosline's conduct particularly improper because of his status as a role model and supervisor of other employees.  [Id. at 1.]  The polygraph exam, according to the Termination Letter, played no part in the termination decision.  [Id. at 2.]

Gosline filed this lawsuit on December 18, 2007.  [Doc. 1.]  He filed an Amended Complaint on March 8, 2008, in which he asserted five state law causes of action and one federal claim against RCI.  [Doc. 21.]  The state law claims are: defamation (Count VI); negligent misrepresentation (Count VIII); negligence (Count X); tortious interference with contractual relations (Count (XII); and common law conspiracy (Count XIII).  RCI moves for summary judgment on all claims.  The sole federal claim is a 42 U.S.C. § 1983 conspiracy claim (Count XI).

## II.    LEGAL STANDARDS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

4

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). <u>Celotex</u>, 477 U.S. at 324.  It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 551–52 (1999).

## III.    ANALYSIS

### A.      42 U.S.C. § 1983 Conspiracy (Count XI)

The Court first addresses Gosline's single federal claim against RCI.  Gosline alleges that RCI, a private business entity, conspired with the governmental actors, NMFA, Sisneros, and Duff, to deprive him of his civil and constitutional rights.  [Doc. 21 at 18.]  RCI moves for summary judgment primarily on the grounds that it is not a state actor.  Gosline argues in response that liability under section 1983 may lie against non-governmental actors who "willfully participate in joint activity with the State or its agents."  [Doc. 56 at 17.]

Under Section 1983, liability attaches only to conduct occurring "under color of law." 42 U.S.C. §1983.  Thus, the only proper defendants in a Section 1983 claim are those who represent the state in some capacity.  <u>Gallagher v. Neil Young Freedom Concert</u>, 49 F.3d 1442, 1447 (10th Cir. 1995).  Application of the "state action doctrine" is "one of the more

5

slippery and troublesome areas of civil rights litigation." Gallagher, 49 F.3d at 1447 (citations and quotation marks omitted). The United States Supreme Court has developed a variety of tests for evaluating whether conduct by private entities constitutes state action, but under each test, "the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State." Gallagher, 49 F.3d at 1447 (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)) (internal quotation marks omitted).

In this case, the Court need not determine whether RCI acted under color of law or whether its conduct should be characterized as state action. The reason is, the Court previously has determined that Gosline has failed to demonstrate that he was deprived of any constitutional rights. In a separate *Memorandum Opinion and Order* filed concurrently herewith, the Court has addressed and dismissed each of the federal constitutional claims Gosline alleged against Defendants Sisneros and Duff. Absent an underlying constitutional violation, Gosline cannot prevail on a section 1983 conspiracy claim. Thompson v. City of Lawrence, Kan., 58 F.13 1511, 1517 (10th Cir. 1995) (holding that to succeed on a section 1983 conspiracy claim, the plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right"). Because Gosline cannot show that he was deprived of any constitutional rights, summary judgment must be granted on this claim.

## B.    State law claims

All Gosline's remaining claims against RCI are state law claims. Because these remaining claims arise under state law, and there is no allegation or evidence that the parties' citizenship is diverse, such claims are before this Court only by virtue of the supplemental

jurisdiction conferred by 28 U.S.C. § 1367(a).  "The district courts may decline to exercise

supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court

has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

The Court therefore must consider whether to exercise supplemental jurisdiction now that

the sole federal claim against RCI will be dismissed.

> 28 U.S.C. section 1367 provides that:
>
> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)  the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Three of these reasons for declining jurisdiction apply here.

First, Gosline's claims for negligence and negligent misrepresentation raise a novel

issue of state law:  whether and to what extent a private investigation firm such as RCI owes

a duty to a non-client such as Gosline.  The courts of New Mexico have addressed the duties

owed to non-clients by lawyers and accountants and generally found that duties do not exist,

or that they exist only in limited circumstances.  See Garcia v. Rodey, Dickason, Sloan, Akin

& Robb, 750 P.2d 118, 122 (N.M. 1988) (holding that lawyer owes no duty to his client's

adversary); Vigil v. State Auditor's Office, 116 P.3d 854, (N.M. Ct. App. 2005) (holding that

former state auditor Vigil failed to demonstrate that he was owed a duty by accounting firm that performed audit commissioned by his successor).  They have not addressed the issue presented here, however, and the determination of a tort duty not only is a question of law for the court but "a policy question that is answered by reference to legal precedent, statutes, and other principles of law."  Herrera v. Quality Pontiac, 73 P.3d 181, 186 (quoting Ruiz v. Garcia, 850 P.2d 972, 975 (N.M. 1993); Chavez v. Desert Eagle Distrib. Co. of N.M. LLC, 151 P.3d 77, 80–87 (N.M. Ct. App. 2006).  The Court concludes that whether to recognize new tort duties is a matter best left to the state courts.

Second, Gosline's five state law claims against RCI substantially predominate over the single federal claim for section 1983 conspiracy.  "A federal court may not exercise pendent jurisdiction over state law claims when the federal claim is insubstantial."  Carey v. Cont'l Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir. 1987).  In procedural facts similar to the ones here, the Tenth Circuit has held that it was error to exercise jurisdiction over state law claims when it had dismissed a federal conspiracy claim against a private actor.  Carey, 823 F.2d at 1405.

In connection with the state law claims, Gosline alleges that "the investigation summary [prepared by RCI], later relied upon by the NMFA to wrongfully terminate Gosline, contains slanderous untruths which demonstrate a bias and prejudice on the part of RCI."  [Doc. 21 at 4–5 (Am. Compl. ¶ 15).]  He further alleges that the "investigation was negligently conducted, included gross inaccuracies, and constitutes an intentional and malicious effort on the part of the NMFA, the individually-named Defendants, and RCI to

deprive Gosline of his constitutionally-protected interests in continued employment with the NMFA." [Id.]

Third, the Court has dismissed all the claims over which it had original jurisdiction, *i.e.*, the federal claims against Sisneros, Duff, and RCI. Furthermore, all section 1983 claims against Defendant NMFA were dismissed pursuant to stipulation. [Doc. 34.] There are thus no federal claims remaining in this lawsuit.

Having granted summary judgment on all of Gosline's claims arising under federal law, the Court declines to exercise supplemental jurisdiction over his remaining state law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction. See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995). The Court is not convinced that these factors weigh in favor of retaining jurisdiction. In this regard, as described above, the Court notes the existence of novel questions of state law and the predominance of the state law claims. Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary. See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990). In addition, the Court's decision not to exercise supplemental jurisdiction is not necessarily fatal to Gosline's state-law claims, as 28 U.S.C. § 1367(d) may provide for the tolling of the limitations period regarding these claims while this litigation was pending.

IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Gosline's 42 U.S.C. section 1983 federal conspiracy claim against Defendant RCI (Count XI) should be dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over the state law claims against RCI (Counts VI, VIII, X, XII, and XIII).

**IT IS, THEREFORE, ORDERED** that *Defendant Robert Caswell Investigations, Inc.'s Motion for Summary Judgment* [Doc. 48], filed August 13, 2008, is **GRANTED;**

**IT IS FURTHER ORDERED** that Count XI against Defendant Robert Caswell Investigations, Inc. is **dismissed with prejudice;**

**IT IS FURTHER ORDERED** that Counts VI, VIII, X, XII, and XIII against Robert Caswell Investigations, Inc. are **dismissed without prejudice.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall **file under seal** Exhibit B to the Casey Affidavit, and its accompanying cover letter, which were delivered to the Court on August 14, 2008.

**SO ORDERED** this 30th day of March 2009**,** in Albuquerque New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge

10